**ABBOT v. WELCH, Former Collector of Internal Revenue.**

No. 60.

District Court, D. Massachusetts.

Feb. 10, 1940.

Melville F. Weston and Powers & Hall, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., and Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and E. E. Angevine, Sp. Assts. to Atty. Gen., for defendant.

McLELLAN, District Judge.

This civil action was heard upon the admissions contained in the pleadings upon written exhibits and upon oral testimony. The plaintiff seeks to recover alleged overpayments of income taxes for the years 1933 and 1934. That the taxes were exacted and that claims for refund were duly filed is established, as are all other facts essential to the plaintiff's case, except as hereafter stated.

With reference to the taxable year 1933, the plaintiff seeks the refund of $2,223.46 principal and $495.71 interest which he paid the defendant. With reference to the taxable year 1934, the plaintiff claims $757.-36 principal and $123.41 interest which he paid the defendant.

### The 1933 Taxes.

The right to recover any portion of the taxes paid for 1933 depends upon whether the plaintiff suffered a deductible loss in that year in connection with the sale of some corporate stock and whether certain rents collected by him while purporting to act as executor of his mother's will constituted a portion of his individual income.

The Loss upon the Sale of Corporate Stock.

In 1926, the plaintiff bought one hundred shares of preferred stock of Art Cinema Corporation for $10,075.83, which amount included an accrued dividend of $75.83 making the actual cost $10,000.[1] The corporation did well enough for a

while and paid dividends until 1931 when they ceased. In 1933, thinking his stock practically worthless, the plaintiff decided to sell it. His determination to do so was based upon a desire to realize his loss and thus obtain the right to deduct its amount in his income tax return. The certificate for these shares stood in the name of one O'Neil and was by him endorsed in blank. On December 29, 1933, the plaintiff took the stock certificate for the one hundred shares to H. C. Wainwright & Co., stock brokers and asked them to sell the stock at the market. Mr. J. Dudley Clark of Wainwright & Co. asked the plaintiff whether the stock was listed anywhere to which the plaintiff replied in the negative. Clark said in substance he would do his best and asked whether if he could get no better price, the plaintiff would take as little as one dollar for the lot. The plaintiff said yes. Mr. Clark communicated with several brokers and could get no bid. If Mr. Clark had consulted certain "Wants and Offerings" as reported by National Stock Summary, he would have found a "Want" under date of October 3, 1933, for 500 shares of this stock at two dollars a share, but neither this circumstance, nor anything else contained in the "Wants and Offerings" adduced in evidence by the defendant leads me to think there was any real market for the stock in late December, 1933. Mr. Abbot, the plaintiff, testified about the purchase and sale of this stock and I am entirely satisfied that the sale for one dollar in December, 1933, to an employee of Wainwright & Co. was made in good faith, was genuine, and free from any intent to re-acquire any stock of like kind. The sale was made to a purchaser unknown to the plaintiff, and the plaintiff neither retained nor intended to retain any control or dominion over the stock. He did, however, in the next year, but after the statutory thirty day period purchase one hundred shares of like stock, a circumstance which I have considered and find insufficient to alter my view that the 1933 sale was genuine and without strings. In order that a subsequent statement of the plaintiff's deductible loss may be understood, it should be added that the cost of making this sale was seven dollars so that in effect the plaintiff got six dollars less than nothing for it.

---

[1] The defendant's brief says something about some common stock having been received by the plaintiff in connection with this transaction about which nothing was said at the trial. Under the circumstances and in view of the admissions contained in the defendant's answer, no further consideration is given to any possible acquisition of common stock.

Without going into greater detail, I find upon all the evidence that the plaintiff suffered a deductible loss of $10,006 in connection with this transaction.

### The Rents from Real Estate.

The plaintiff's mother died in December, 1932, leaving a will naming the plaintiff as executor, devising to him some real estate in Maine, and making him the sole residuary beneficiary under the will. The personal property in the estate was abundantly sufficient to pay all debts, charges and legacies. The plaintiff, having in mind among other things, that he might thereby not be subject to as large an income tax, decided to collect the rents as executor instead of as owner of the real estate. As to the rents for 1933 and 1934, he returned them as executor's income and having paid the income taxes incident thereto, the amounts of the tax due by reason of the inclusion of the rents were refunded to him as executor. (This circumstance is made the subject matter of the defendant's alternative defense which under the doctrine of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L. Ed. 1265, I should have held pro tanto valid if I had thought the plaintiff entitled to prevail as to the rentals aspect of the case.)

The Commissioner regarded the income from the real estate owned by the plaintiff as his individual income, determined the plaintiff's taxes on that basis and collected the amounts before stated for the years 1933 and 1934. The amounts collected for 1933 were due both to a disallowance of the loss on stock heretofore mentioned and to the Commissioner's determination that the income from real estate was taxable as the plaintiff's individual income.

### Conclusions of Law

1. The plaintiff is entitled to judgment for such portion of the taxes paid for 1933 as is incident to a disallowance of his claim that the loss upon the sale of one hundred shares of the preferred stock of the Art Cinema Corporation was deductible. If the parties can not agree upon this amount, they may be heard further.

██ 2. The plaintiff is not entitled to recover anything as to either year upon the theory that the income from his realty is not to be regarded as his own individual income. While I have considered with care the discussion in the plaintiff's brief dealing with the statutory authority of an executor with the devisee's consent to collect rents and urging in spite of Kimball v. Sumner, 62 Me. 305 that an executor is not then to be regarded as a mere agent for the devisee, I find it unnecessary to discuss this matter at length. The truth is that by virtue of the devise, the plaintiff became the owner of the real estate, subject, of course, to having it taken away from him in the event that it should be needed for the payment of the testatrix's debts. Littfield v. Eaton, 74 Me. 516, 522. See also Gibson v. Farley, 16 Mass. 280. There was, as heretofore found, no such need. As owner, then, the plaintiff could collect the income personally, and if he saw fit to collect it as executor, he was, under the circumstances heretofore found, the only person who had a valid claim to it and it was taxable as his individual income.

When the parties shall have agreed upon and notified the clerk as to the amount recoverable in view of the deductible loss realized upon the sale of the Art Cinema Corporation stock, judgment may be entered for that sum and interest thereon according to law.